**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KARYN BLUMSTEIN-TORRELLA,**

                          **Plaintiff,**

           **-against-**

**NEW YORK CITY DEPARTMENT OF**
**EDUCATION AND BARBARA**
**BELLAFATTO,** *Principal P.S. 36*,

                          **Defendants.**

---

**19-cv-3492 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

> Plaintiff Karyn Blumstein-Torrella brings this action against Defendants New York City
Department of Education ("NYC DOE" or "DOE") and Barbara Bellafatto for (1) interference and
retaliation under the Family and Medical Leave Act of 1993 ("FMLA"); (2) disability
discrimination, retaliation and hostile work environment under the Americans with Disabilities
Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human
Rights Law ("NYCHRL"); (3) age discrimination, retaliation and hostile work environment under
the Age Discrimination in Employment Act of 1967 ("ADEA"), NYSHRL and NYCHRL;
(4) religious discrimination, retaliation and hostile work environment under Title VII of the Civil
Rights Act of 1964 ("Title VII"), NYSHRL and NYCHRL.  Defendants move to partially dismiss
Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
For the reasons that follow, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.[1] *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The following facts alleged in the Amended Complaint are thus assumed to be true for the purposes of this motion.

Plaintiff is an employee of NYC DOE.  (Am. Compl., ECF No. 12 ¶ 7.)  She is a practicing Roman Catholic and 47 years old.  (*Id.* ¶ 8.)  She suffers from Celiac disease, Hashimoto's disease, Rheumatoid Arthritis, and Fibromyalgia, and has a history of breast cancer.  (*Id.*)

In 2015, after a medical transfer, Plaintiff was assigned to P.S. 36, where Defendant Bellafatto was Principal.  (*Id.* ¶ 11.)  Plaintiff alleges that when Bellafatto realized that she would have to pay Plaintiff's salary out of the school budget, she gave Plaintiff an "Unsatisfactory" performance rating.  (*Id.*)  This was later overturned by Plaintiff's union representative.  (*Id.*)  On June 23, 2016, Plaintiff also received a disciplinary letter for excessive absences, even though those absences were medically justified.  (*Id.* ¶ 12.)

Plaintiff was granted FMLA intermittent leave from December 8, 2016 through December 8, 2017.  (*Id.* ¶ 13.)  Notwithstanding Plaintiff's FMLA status, Bellafatto still issued disciplinary notices for time and attendance issues related to Plaintiff's health conditions and her religious observance.  (*Id.* ¶ 14.)  Plaintiff alleges that she received lower performance evaluations from Bellafatto than she had received from other previous supervisors.  (*Id.* ¶ 21.)

---

[1] On October 1, 2021, Plaintiff filed a letter attaching the decision on her 3020-a proceeding because it "may be relevant to the Court's determination in light of Defendants' pending motion to dismiss."  (ECF No. 21.)  Plaintiff has not provided any legal basis for the Court to review extraneous materials, and as such, will disregard Plaintiff's letter and any factual allegations which may be contained therein.

Plaintiff also alleges that Bellafatto questioned her religious observance.  On October 31, 2016, Bellafatto told Plaintiff that she should attend church at night, instead of during the day like Bellafatto did.  (*Id.* ¶ 15.)  Again, on October 30, 2017, Bellafatto asked Plaintiff about her surname name being Blumstein-Terrella and asked Plaintiff to elaborate on her religious beliefs.  (*Id.* ¶¶ 15–16.)  Bellafatto claimed that Plaintiff did not submit the necessary paperwork in time to take religious leave for All Saints Day, even though Plaintiff had submitted the paperwork several weeks beforehand.  (*Id.* ¶ 16.)  On December 8, 2017, Bellafatto improperly logged an FMLA absence as a religious observance day, which allegedly negatively impacted Plaintiff's compensation.  (*Id.* ¶ 17.)  Plaintiff alleges that another employee, Lisa Sefcik, was treated differently when she asked for religious observance of Ascension Thursday on May 10, 2018.  (*Id.* ¶ 18.)  Plaintiff alleges that Sefcik was granted leave to observe the holiday, while Plaintiff never received any response to her request.  (*Id.*)

In September 2017, Bellafatto sent Plaintiff to the NYC DOE medical unit, in violation of her protected FMLA leave status.  (*Id.* ¶ 19.)  This appointment was postponed, and Plaintiff was told to report to her school assignment.  (*Id.*)  When Plaintiff arrived at the school the following day, Bellafatto told her that she was not allowed to stay and placed her into the "ATR pool" and told her to report to a different school.  (*Id.*)  Bellafatto was forced to accept Plaintiff back at the school after intervention by Plaintiff's union representative.

On October 19, 2017, Bellafatto told Plaintiff that her FMLA intermittent leave was terminated and that her leave should never have been approved.  (*Id.* ¶ 20.)  She also allegedly told Plaintiff "that if [she] was going to be out sick, then [she] should just resign."  (*Id.*)

On April 13, 2018, Bellafatto told Plaintiff that she was a financial burden to the school due to her high salary and the time off that she required due to her disability.  (*Id.* ¶ 22.)  Bellafatto

told Plaintiff that because of her high salary, Bellafatto could not hire school aides or buy furniture or supplies that the school needed.  (*Id.*)  She also allegedly told Plaintiff that she should resign from her position, take disability retirement or medical leave because she did not foresee Plaintiff's health condition improving in the future.  (*Id.*)

On April 16, 2018, following an arbitration in which Plaintiff filed an "APPR" challenging an observation report from Bellafatto, Plaintiff received a disciplinary letter in her file for time and attendance issues from Bellafatto.  (*Id.* ¶ 23.)  The disciplinary letter referenced days off that had been approved for FMLA absences, bereavement, and religious observance.  (*Id.*)

Plaintiff also alleges that Bellafatto never posted an FMLA notice in the school, as she was required to do under the FMLA, until April 26, 2018.  (*Id.* ¶ 24.)  She only gave Plaintiff an FMLA eligibility notice on April 26, 2018 after Plaintiff's FMLA leave ended on December 8, 2017.  (*Id.*)

Plaintiff filed two formal complaints against her employer.  On May 23, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR").  (*Id.* ¶ 25.)  She also filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 10, 2018.  (*Id.*)  Despite her complaint, on or about October 17, 2018, NYC DOE served time and attendance disciplinary charges on Plaintiff, which resulted in a $1,500 fine against her. (*Id.* ¶ 26.)  On December 8, 2018, Plaintiff filed an FMLA leave request for intermittent leave. (*Id.* ¶ 27.)  Bellafatto denied this request in January 2019, after the five-day response requirement under the FMLA.  (*Id.*)  Plaintiff received her right to sue letter on February 12, 2019 and filed the instant federal action on April 19, 2019.  (*Id.* ¶ 28.)

Plaintiff alleges that during this period, Defendants' discrimination continued.  On April 5, 2019 and June 7, 2019, Bellafatto issued another disciplinary letter to Plaintiff for time and attendance issues.  (*Id.* ¶ 29.)  On June 21, 2019, despite receiving no poor observation reports

during the school year, Plaintiff alleges that she was retaliated against by Defendants for filing her federal complaint when she was served Section 3020-a disciplinary charges to terminate her employment.  (*Id.* ¶ 30.)  She was reassigned from her classes on July 11, 2019 and has been suspended with pay pending a hearing on the disciplinary charges.  (*Id.*)  In August 2019, Plaintiff learned that her classroom had been closed due to lead contamination, which she believes contributed to her absences during the prior school year.  (*Id.* ¶ 31.)  She also alleges that she was exposed to children who had contagious illnesses which further contributed to her absences during the school year.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff initiated this action on April 19, 2020.  (Compl., ECF No. 1.)  Defendants filed a motion to dismiss on March 2, 2020. (ECF No 18.)[2]   On April 3, 2020, Plaintiff filed her memorandum of law in opposition to the motion.  (ECF No. 19.)  On April 17, 2020, Defendants submitted their reply memorandum.  (ECF No. 21.)  On October 1, 2021, Plaintiff filed a letter attaching Plaintiff's favorable decision of her 3020-a decision.  (ECF No. 21.)

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief.

---

[2] The Clerk of Court noted that the motion had been filed improperly, but Defendants never corrected the filing.

*Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id.*

## DISCUSSION

### I.   Abandoned Claims

As a threshold issue, the Court will address the claims which Defendants moved to dismiss but which Plaintiff never defended in her opposition to the motion to dismiss.

Plaintiff does not address her claims for hostile work environment based on her religion under Title VII, NYSHRL or NYCHRL, hostile work environment based on her disability under the NYSHRL and NYCHRL, hostile work environment based on age under the ADEA, the NYSHRL or NYCHRL, and retaliation under the NYSHRL and NYCHRL.  Accordingly, the Court deems that these claims have been abandoned and are dismissed on that basis.  *See Pincover v. J.P. Morgan Chase Bank*, N.A., 592 F. Supp. 3d 212, 227 (S.D.N.Y. 2022) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citations and quotations omitted).

### II.   Notice of Claim

"New York Education Law § 3813 requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer." *Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (citing N.Y. Educ. Law § 3813(1)).  While "[s]uperintendents qualify as officers upon whom a notice of claim must be filed…principals do not." (*Id.* (citing N.Y. Educ. Law § 2(13)).

Defendants argue that Plaintiff's failure to allege that she timely filed a notice of claim bars her claims against NYC DOE under the NYSHRL and NYCHRL.  (ECF No. 18-1 at 5.)  Plaintiff

argues that the Amended Complaint clearly pleads that she filed a complaint on May 23, 2018 with the SDHR and that it was deemed dually filed with the EEOC on September 10, 2018, thus satisfying the notice requirement under Section 3813.  (ECF No. 19 at 19.)

The Court finds that Plaintiff has not met the notice of claim requirement under Section 3813.  Section 3813 requires "a plaintiff to plead compliance with § 3813(1)'s notice of claim requirements…[and] [f]ailure to satisfy § 3813's requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court. *Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. 2013) (citing *Edwards v. Jericho Union Free Sch. Dist.*, 904 F.Supp.2d 294, 302 (E.D.N.Y.2012)).  While "some courts in this district have opined that a charge filed with the EEOC may, under some circumstances, satisfy § 3813's notice of claim provisions… that EEOC charge must meet the specific requirements of § 3813, including the requirement that it be served on the proper 'governing body' of a school and be served within three months after the accrual of a claim. *Thomas*, 938 F. Supp. 2d at 360.

Here, Plaintiff merely pleads that "[o]n or about May 23, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights (SDHR). She received this notice from the SDHR that the complaint was deemed dually filed by the SDHR and EEOC on September 10, 2018." (Am. Compl., ECF No. 12 ¶ 25.)  The Amended Complaint does not set forth whether Plaintiff complied with Section 3813's requirements service requirements, nor does Plaintiff expound on this in her opposition to Defendants' motion.  Accordingly, the Court finds that Plaintiff has failed to comply with the notice requirements under the NYSHRL and NYCHRL and that these against NYC DOE are thus dismissed. *See Collins*, 156 F. Supp. 3d at 460.

### III.    Statute of Limitations

Defendants argue that Plaintiff's ADA, Title VII, and ADEA claims accruing before July 27, 2017 are untimely.  (ECF No. 18-1 at 6.)[3]  Plaintiff appears to concede this argument in her opposition, stating merely that "Defendants cannot credibly argue that the more recent blatant acts of retaliation against Ms. Torrella since filing her SDHR complaint and federal complaint against Principal Bellafatto with formal disciplinary charges seeking her termination are time-barred under any scenario."  (ECF No. 19 at 19.)

The Court finds that Plaintiff's claims under Title VII, the ADA and the ADEA pre-dating July 27, 2017 are time barred.  It is well established that claims arising under the Title VII, the ADA and the ADEA are subject to a 300-day statute of limitations.  *See Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) (applying a 300-day statute of limitations to Title VII, ADA and ADEA claims).  Plaintiff's claims that she received an unsatisfactory annual evaluation for the 2015–2016 school year, that on June 23, 2016 she received a disciplinary letter for excessive absences, and that she received further disciplinary letters in the 2016–2017 school year are thus time-barred.  (Am. Compl., ECF No. 12 ¶¶ 11, 12, 14.)  However, the Court may "consider these acts only as 'background evidence' in evaluating the merits of [Plaintiff's] discrimination claims."  *Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

---

[3] Because the Court has already dismissed Plaintiff's claims against NYC DOE arising under the NYSHRL and NYCHRL, the Court will not address Defendants' arguments with respect to the timeliness of those claims.  (*See* ECF No. 18-1 at 5–6.)

IV.     **Interference under the FMLA**

For an FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 464 (S.D.N.Y. 2011) (*Krosmico v. JP Morgan Chase & Co.*, No. 06-CV-1178 (SJF), 2006 WL 3050869, at *2 (E.D.N.Y. Oct. 19, 2006)).  To state an interference claim under 29 U.S.C. § 2615(a)(1), a plaintiff must adequately plead: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which he was entitled under the FMLA.  *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

Plaintiff fails to plead facts to support a claim of FMLA interference.  "To be eligible for FMLA leave, an employee must have been employed for at least twelve months by the employer from whom she is requesting leave, and she must have worked at least 1,250 hours with that employer in the twelve months prior to the beginning of her medical leave.  *Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020) (citing 29 U.S.C. § 2611(2)(A)).  Here, Plaintiff alleges that she was granted FMLA intermittent leave from December 8, 2018 through December 8, 2017 (ECF No. 12 ¶ 13), but that her FMLA intermittent leave was terminated on October 19, 2017 after Defendant Bellafatto told her "that the leave should never have been approved" (*id.* ¶ 20).  However, Plaintiff does not plead that she was eligible for FMLA intermittent leave during this time period.  Although she alleges that she had been employed by Defendants since 1995, she does not allege whether worked 1,250 hours in the 12-month period prior to her request for FMLA leave.  "[E]ligibility is a threshold issue which has to be proved by plaintiff in order for him to be entitled to relief" for FMLA interference claims.  *Bulmer v. Yellow Freight Sys., Inc.*, 213 F.3d

625 (2d Cir. 2000).  This pleading deficiency is fatal to Plaintiff's FMLA claim and grounds for dismissal.  *Arroyo-Horne*, 831 F. App'x at 539.

Moreover, Plaintiff raises arguments in her opposition to the motion to dismiss that are not actually alleged in the Amended Complaint.  While the Amended Complaint purports to allege a claim of FMLA interference based on the termination of her intermittent leave status on October 19, 2017 (Am. Compl., ECF No. 12 ¶ 20), in her opposition to the motion to dismiss, Plaintiff describes her claim as Defendants' alleged miscalculation of the number of days she was entitled to for her FMLA intermittent leave and failure to inform her how her FMLA intermittent leave was being calculated.   (ECF No. 19 at 17–18.)  None of this is actually alleged in the Amended Complaint.  Plaintiff cannot rely on factual assertions and allegations that appear for the first time in her opposition to the motion to dismiss and which are not plead.  *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 585 (S.D.N.Y. 2022) ("A district court [] 'errs when it…relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'") (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000)).  Accordingly, Plaintiff's claim for interference under the FMLA is dismissed.[4]

## V.    Religious Discrimination

Plaintiff asserts claims of religious discrimination in violation of Title VII, the NYSHRL and NYCHRL.  Defendants argue that Plaintiff has failed to allege a discriminatory animus based on Plaintiff's religion with respect to Defendants' conduct towards her and that Plaintiff has not alleged an adverse employment action.

---

[4] Defendant does not move to dismiss Plaintiff's claim for retaliation under the FMLA.  (*See generally* ECF Nos. 18, 20.)

Title VII prohibits an employer from discriminating "against any individual ... because of such individual's ... religion ...." 42 U.S.C. § 2000e-2(a)(1). The word "religion" is defined to "include[ ] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... [a] religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

To establish a *prima facie* case of discrimination, a plaintiff must plead that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she has pleaded facts that suggest an inference of a discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "[W]hile a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss…it must at a minimum assert nonconclusory factual matter sufficient to "'nudge[] [its] claims'…'across the line from conceivable to plausible.'" *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Thus, to survive a motion to dismiss, a plaintiff asserting a Title VII discrimination claim must plausibly allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Claims arising under Title VII and the NYSHRL may be analyzed together. *See Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *6 (S.D.N.Y. June 23, 2023) (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)); *see also Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims.").

The Amended Complaint does not include sufficient facts to support a claim of religious discrimination.  Plaintiff alleges that Bellafatto told Plaintiff that she should attend church in the evening like Bellafatto did (Am. Compl., ECF No. 12 ¶ 15), and interrogated Plaintiff about her religious beliefs by questioning Plaintiff about her surname (*id.* ¶ 16).  In October 2017, Bellafatto told Plaintiff that she had not submitted the necessary paperwork for her to take off All Saints Day, when in fact Plaintiff avers that she submitted the paperwork weeks before the holiday.  (*Id.* ¶ 16.)  Plaintiff also alleges that another employee—Ms. Sefcik—was allowed to take a day off for Ascension Thursday in May 2018, while Plaintiff never received a response to her same request. (*Id.* ¶ 18.)  Plaintiff alleges that Plaintiff received "disciplinary notices" for absences that were due, in part, to religious observance for Catholic holidays.  (*Id.* ¶¶ 13, 23.)  Plaintiff argues that "[a]ll of this evidence bespeaks disparate treatment based on religion and failure to accommodate her religious leave requests that warrants further factual development and denial of Defendants' motion to dismiss."  (ECF No. 19 at 13.)

These allegations do not support an inference that Plaintiff was discriminated against because of her religion.  Essentially, Plaintiff alleges that she was not allowed to take days off for religious observance for All Saints Day in 2017 and Ascension Thursday in May 2018.  It is unclear from the pleadings whether Plaintiff took these days off anyway, or whether she was unable to observe these holidays.  Moreover, the allegations do not give rise to an inference of a discriminatory animus on the part of Bellafatto or the NYC DOE.  The fact that other Catholic employees requested and received permission to observe these holidays suggests that Plaintiff's requests were not ignored because of her religion, but may have been overlooked or ignored for some other reason, such as administrative incompetence or personal animus.  Plaintiff does not allege that her "performance [was criticized] in [religiously] degrading terms" or that "invidious

comments" were made "about others in [her] protected group." *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). "Nor does she allege 'more favorable treatment of employees not in [her] protected group.'" *Id.*  Thus, Plaintiff has not adequately pled a discriminatory animus on the part of Defendants.  *See Brodt v. City of New York*, 4 F. Supp. 3d 562, 569 (S.D.N.Y. 2014) ("Courts in this District have dismissed claims when a plaintiff's allegations of discriminatory motive reflected an uncomfortable workplace environment, as opposed to discriminatory animus.")

Even under the more lenient standard under the NYCHRL, the Amended Complaint fails to state a claim of religious discrimination.  Under the NYCHRL, it is "an unlawful discriminatory practice for an employer or an agent thereof to…discriminate against such person in compensation or in terms, conditions, or privileges of employment."  N.Y.C. Admin Code § 8-107(1)(a)(3). NYCHRL claims must be reviewed "separately and independently" from any other claims and construed "broadly in favor of discrimination plaintiffs[.]" *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  "Ultimately, however, as with Title VII, the NYCHRL 'is not a general civility code,' and where a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' or the defendant demonstrates that the alleged conduct did not exceed 'petty slights or trivial inconveniences,' plaintiff's claim must fail." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234–35 (S.D.N.Y. 2021) (quoting *Ramirez v. Michael Cetta Inc.*, No. 19 Civ. 986 (VEC), 2020 WL 5819551, at *18 (S.D.N.Y. Sept. 30, 2020)).

For these reasons, Plaintiff's claims for religious discrimination under Title VII,  NYSHRL and NYCHRL are dismissed.

VI.   **Age Discrimination**

Plaintiff also asserts claims for age discrimination in violation of the ADEA, NYSHRL and NYCHRL.  The ADEA makes it unlawful for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *McCormack v. IBM*, 145 F. Supp. 3d 258, 265-66 (S.D.N.Y. 2015).  Like Plaintiff's other discrimination claims, to survive a motion to dismiss for an age discrimination claim brought under the ADEA, she must plausibly allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.  She also must plausibly allege "that age was the but-for cause of the employer's adverse decision." *Vega*, 801 F.3d at  86 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Beyond alleging that Plaintiff is 47 years old, there are no other allegations regarding potential discrimination based on Plaintiff's age in the Amended Complaint.  While the Amended Complaint makes vague allegations that Bellafatto "told Plaintiff that she was a financial burden to her school due to her high salary" (Am. Compl., ECF No. 12 ¶ 22), the Amended Complaint does not tie Bellafatto's comment about Plaintiff's alleged high salary to her age or seniority.  In fact, directly following this statement, Plaintiff alleges that Bellafatto's complaint about Plaintiff's salary was because Bellafatto believes that she needed to frequently hire substitutes when Plaintiff took time off for disability-related reasons.  (*Id.*)  These vague allegations are insufficient to support a claim for age discrimination under the ADEA and also insufficient under the more lenient standards under the NYSHRL and NYCHRL.   Accordingly, Plaintiff's claims for age

discrimination under Title VII, NYSHRL and NYCHRL, which is completely devoid of factual support in the Amended Complaint, are dismissed.  *See George v. Pro. Disposables Int'l, Inc.*, No. 15-CV-3385(RA)(BCM), 2016 WL 3648371, at *6 (S.D.N.Y. June 1, 2016), *report and recommendation adopted sub nom. George v. Pro. Disbosables Int'l, Inc.*, No. 15-CV-3385 (RA), 2016 WL 3906715 (S.D.N.Y. July 14, 2016).

## VII.    Disability Discrimination

Plaintiff alleges that Defendants violated the ADA, NYSHRL and NYCHRL by discriminating against Plaintiff due to her disabilities.  (Am. Compl., ECF No. 12 ¶¶ 34, 47, 50.) Plaintiff also alleges that Defendants subjected her to a hostile work environment in violation of the ADA.  (*Id.* ¶ 35.)[5]

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to…the hiring, advancement, or discharge of employees, …and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "Discrimination claims under the NYSHRL are governed by the same legal standards as federal ADA claims."  *Balchan* v. *City School District of New Rochelle*, No. 21-CV-04798 (PMH), 2023 WL 4684653, at *16 (S.D.N.Y. July 21, 2023) (quoting *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021)).

"The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job

---

[5] Although in her opposition papers, Plaintiff makes argument related to a "failure to accommodate" theory under the ADA, the Amended Complaint does not include a cause of action for this claim and thus the Court will not consider these arguments for the purposes of the motion to dismiss.

with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir.2015)).  "Applying the analysis employed in Title VII discrimination claims by the Second Circuit, to survive a motion to dismiss, a plaintiff must allege facts that show (1) the employer took adverse action against her, and (2) the action was taken because of her disability or perceived disability." *Thomson v. Odyssey House*, No. 14-CV-3857 MKB, 2015 WL 5561209, at *16 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (citing *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir.2015)).

"Although the elements of a *prima facie* case of discrimination under the ADA are [] different from those under Title VII, a plaintiff must still "demonstrat[e] that [s]he suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent…" *Dooley*, 636 F. App'x at 21 (citing *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015)).  As with Plaintiff's other discrimination claims, she "is not required to plead a *prima facie* case under *McDonnell Douglas* to defeat a motion to dismiss," and to show discriminatory intent, she "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." *Id.* (quoting *Vega*, 801 F.3d at 84) (alterations and internal quotation marks omitted).

Plaintiff alleges that she "has various disability-related medical issues relating to a history of breast cancer, Crohn's and Celiac disease, Hashimoto, Rheumatoid Arthritis, and Fibromyalgia." (Am. Compl., ECF No. 12 ¶ 8.)  Plaintiff argues that her disabilities have caused her to be absent from work for "various necessary medical treatments" and that Bellafatto disciplined Plaintiff due to those absences and made derogatory comments about Plaintiff's

disabilities.  (ECT No. 19 at 10.)  She alleges that she received disciplinary notices and letters from Defendants related to her health-related absences, some of which she alleges were excused medical absences under her FMLA leave status.  (Am. Compl., ECF No. 12 ¶¶ 12, 14, 23.)  She also alleges that Bellafatto made derogatory remarks to Plaintiff stating that her frequent absences required Bellafatto to hire substitute teachers, which ate into the school's budget.  (*Id.* ¶ 22).  Bellafatto allegedly told Plaintiff she doubted that Plaintiff's health conditions would improve, and encouraged her to either take medical leave, apply for disability retirement, or simply resign.  (*Id.* ¶ 22.)  Because of these medical absences, Defendants initiated Section 3020-a disciplinary charges against Plaintiff seeking termination of her employment.  (*Id.* ¶ 30.)  Pending this process, Plaintiff was reassigned from her classes and was suspended without pay.  (*Id.*)

Viewing the facts in the light most favorable to Plaintiff, the Court finds that the Amended Complaint adequately states a claim of disability discrimination under the ADA and the NYSHRL. Plaintiff alleges that her various health conditions necessitated absences from work so that she could attend medical appointments.  Defendants argue that Plaintiff has not alleged that any of her health conditions constitute a disability under the ADA because she has not alleged that any of these conditions "substantially limit[] one of more major life activities" (ECF No. 18-1 at 12 (citing 42 U.S.C. § 12102(1)(A)); however, the definition of disability is to be "construed in favor of broad coverage...."  42 U.S.C. § 12102(4)(A).  Furthermore, Plaintiff is not required to plead a *prima facie* claim in order to survive a motion to dismiss.  Plaintiff's allegations, read as a whole, support the inference that her health conditions substantially limited her major life activities and interfered with her work duties in so far as she needed to take periodic absences to attend medical appointments and address other health concerns.  *See Idlisan v. New York City Health and Hospitals Corp.*, No. 12 Civ. 9163, 2013 WL 6049076, at *4 (S.D.N.Y. Nov.15, 2013) (the *prima*

*facie* elements of an ADA claim "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible.")

Plaintiff has also alleged she suffered an adverse employment action as a result of these disability-related absences.  "An adverse employment action is a 'materially adverse change in the terms and conditions of employment,' which can include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities,' among other possibilities."  *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014) (quoting *Sanders v. N.Y.C. Human Res. Admin*., 361 F.3d 749, 755 (2d Cir.2004)).  Here, Plaintiff alleges that because of these absences, Defendants issued several disciplinary letters to Plaintiff's file and then initiated Section 3020-a disciplinary charges against Plaintiff seeking termination of her employment.  Plaintiff was suspended without pay and reassigned from her classroom.  That this disciplinary action was motivated by discriminatory animus is supported by the allegations that Defendant Bellafatto made remarks to Plaintiff about the additional expense to the school caused by Plaintiff's absences, that Bellafatto did not believe Plaintiff's medical conditions would get any better, and that Bellafatto alleged pressured Plaintiff to take disability leave or quit her job.  These allegations give plausible support to a minimal inference of discriminatory motivation and are sufficient for the Amended Complaint to survive a motion to dismiss.  *See Vega*, 801 F.3d at 84.

For these reasons, the Court finds that the Amended Complaint adequately states a claim of disability discrimination under the ADA and NYSHRL.  Because the NYCHRL is more expansive than the NYHSRL and the ADA, the Court also finds that Plaintiff has adequately stated a claim of disability discrimination under the NYCHRL.  *See Weekes v. JetBlue Airways Corp.*,

No. 21-CV-1965 (MKB), 2022 WL 4291371, at *8 (E.D.N.Y. Sept. 16, 2022) (citing *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 n.1 (2d Cir. 2021)).

Next, Plaintiff also asserts claims for hostile work environment based on her disability in violation of the ADA. The Second Circuit has confirmed that a plaintiff may bring a hostile work environment claim under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (recognizing a claim for hostile work environment under the ADA co-extensive with the parallel claim under Title VII.) "To state a claim that a plaintiff was subjected to a hostile work environment, a complaint must plausibly allege a workplace setting 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." (*Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004)).

The Amended Complaint does not state a claim of hostile work environment under the ADA. Plaintiff alleges that Defendants subjected her to a hostile work environment by "never giving a key to two second floor bathrooms, giving her assignments that required excessive walking, stairclimbing, and lunch duty against the union contract, giving her disciplinary letters that she had to sign without an opportunity to review them, and having her teach out of her license area." (Am. Compl., ECF No. 12 ¶ 35.) Although in her opposition Plaintiff argues that Bellafatto's failure to give Plaintiff a bathroom key, requiring her to walk long distances, and attend field trips, were onerous for her due to her medical issues (ECF No. 19 at 11), this is not actually alleged in the Amended Complaint, which makes no allegations as to how these alleged

incidents were related to Plaintiff's disabilities.  Accordingly, Plaintiff's claim for hostile work environment under the ADA is dismissed.  *See Zabar v. New York City Dep't of Educ.*, No. 18-CV-6657 (PGG), 2020 WL 2423450, at *6 (S.D.N.Y. May 12, 2020) ("The absence of factual allegations providing a causal nexus between Plaintiff's disability and the alleged adverse actions is fatal to Plaintiff's hostile work environment claim.").

## VIII.    Retaliation

Plaintiff asserts causes of action for retaliation under Title VII, the ADEA, and the ADA. Defendants argue that Plaintiff has not established "but for" causation between the alleged protected activity and the adverse employment actions and thus must be dismissed on that basis.

Under Title VII, the ADEA, and the ADA, an employer may not "discriminate against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter ...."  42 U.S.C. § 2000e–3(a); *see also Napoleoni v. New York City Dep't of Parks & Recreation*, No. 18-CV-2578 (MKB), 2018 WL 3038502, at *4 (E.D.N.Y. June 18, 2018) (reciting similar language for ADEA retaliation claims); *see also Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018) ("The ADA contains nearly identical language [as Title VII], and retaliation claims under the two statutes are analyzed under the same framework.").  "A plaintiff makes out a *prima faci*e case of retaliation in a Title VII case by coming forward with evidence of  1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action."  *Brodt*, 4 F. Supp. 3d at 571 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir.2013) (internal quotations omitted)).  "A causal connection between an alleged adverse action and protected activity may be demonstrated by temporal proximity."  *Zabar*, 2020 WL 2423450, at *6 (citing *Nagle v. Marron*, 663 F.3d 100,

20

110 (2d Cir. 2011) ("A plaintiff can establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.")).  For a retaliation claim to survive a motion to dismiss under either statute, "the plaintiff must plausibly allege that: (1) [her employer] discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice."  *Salas*, 298 F. Supp. 3d at 685 (quoting *Vega*, 801 F.3d at 90).

Plaintiff alleges that she filed an SDHR complaint on May 23, 2018 and an EEOC complaint on September 10, 2018.  (Am. Compl., ECF No. 12 ¶ 25.)  On October 17, 2018, she alleges that DOE served her with attendance and disciplinary charges which resulted in a $1,500 fine against her.  (*Id.* ¶ 26.)  She received her right to sue letter on February 12, 2019, and filed the instant federal complaint on April 19, 2019.  (*Id.* ¶ 28.)  Plaintiff received additional disciplinary letters referencing time and attendance issued on April 5, 2019 and June 7, 2019.  (*Id.* ¶ 29.)  Then, on June 21, 2019, she was notified that DOE had initiated a Section 3020-a disciplinary charge and then on July 11, 2019 she was suspended without pay pending a hearing.  (*Id.* ¶ 30.)

Accepting these allegations as true and drawing all inferences in Plaintiff's favor, the Court finds that the Amended Complaint adequately states a claim for retaliation under the ADA, ADEA and Title VII.  Plaintiff engaged in protected activity when she filed her SDHR and EEOC discrimination complaints, and again when she filed this federal action.  Defendants do not dispute that they knew that Plaintiff had filed these formal complaints of discrimination.  An "adverse employment action" in the context of a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega*, 801 F.3d at 90.  The two formal disciplinary hearings (initiated on October 17, 2018 and July 11, 2019), constitute adverse employment actions for the purposes of retaliation, as well as the additional

disciplinary letters issued to Plaintiff on April 5, 2019 and June 7, 2019.  *See* Vega, 801 F.3d at 92 ("[A] poor performance evaluation could very well deter a reasonable worker from complaining.") (citing *Krinsky v. Abrams*, No. 01–CV–5052 (SLT)(LB), 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) ("[A] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a charge of discrimination.")).

Plaintiff has sufficiently pleaded facts that indirectly establish causation between her protected activity and these adverse employment actions.  Causation can be plead by "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Lees v. Graduate Ctr., City Univ. of New York*, 696 F. App'x 530, 531 (2d Cir. 2017).  The causal connection here is established "by showing that the protected activity was followed closely by the discriminatory treatment."  *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks and citations omitted).  The EEOC complaint was filed on September 10, 2018.  (Am. Compl., ECF No. 12 ¶ 26.)  Shortly thereafter, on October 17, 2018, NYC DOE "served time and attendance disciplinary charges against Plaintiff" which resulted in a $1,500 fine against her.  (*Id.*)  Again, shortly after filing her federal complaint on April 19, 2019, Defendants initiated the Section 3020-a proceedings seeking termination of her complaint on June 21, 2019.  (*Id.* ¶ 30.)  Although "[t]emporal proximity alone is generally insufficient after about three months…"  *Berrie v. Bd. Of Educ. Of the Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018), there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal

relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Littlejohn*, 795 F.3d at 31.

Defendants' argument that these disciplinary charges were the natural escalation of the disciplinary letters in Plaintiff's file related to her absences is unavailing. Construing all ambiguities in Plaintiff's favor, that there seems to have been a sudden escalation in the disciplinary action taken against Plaintiff with regards to her absences following her formal discrimination complaints supports an inference that these actions could have been retaliatory. This, combined with the temporal proximity between Plaintiff's protected activity and Defendants' abrupt escalation in disciplinary measures against Plaintiff following that activity, is sufficient for the Plaintiff's retaliation claim to survive a motion to dismiss. *See id.*

## CONCLUSION

For the reasons set out above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The parties shall submit a joint status letter no later than **fourteen days** from the date of this decision, including whether Plaintiff seeks leave to file an amended complaint.

**SO ORDERED.**

**Dated: August 9, 2023**
      **New York, New York**

                                     **ANDREW L. CARTER, JR.**
                                     **United States District Judge**