**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
KARYN BLUMSTEIN-TORRELLA,

<table>
<tr><td></td><td>Plaintiff,</td><td>**19-CV-3492 (ALC) (VF)**</td></tr>
<tr><td>-against-</td><td></td><td>**REPORT AND<br>RECOMMENDATION**</td></tr>
</table>

NEW YORK CITY DEPARTMENT OF EDUCATION,
et al.,

                                        Defendants.
------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE ANDREW L. CARTER, Jr., United States District Judge.**

On August 9, 2023, the Honorable Andrew L. Carter, Jr. granted in part and denied in part a motion to dismiss filed by the New York City Department of Education (the "DOE") and Barbara Bellafatto, Principal of Public School 36 ("P.S. 36") in New York City ("Bellafatto" and together with the DOE, "Defendants"). See ECF No. 22. The Court dismissed a number of Plaintiff's claims but gave Plaintiff 14 days to inform the Court whether she would seek leave to file an amended complaint. Id. Presently before the Court is Plaintiff's motion for leave to file a second amended complaint. See ECF No. 31 For the reasons set forth below, I respectfully recommend that the motion for leave to file a second amended complaint be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

A. Factual History

Plaintiff is a 51-year-old Roman Catholic with various disability-related medical issues that affect her autoimmune system. See ECF No. 33-1 ¶ 8. Plaintiff has had breast cancer and has Crohn's and Celiac disease, Hashimoto, rheumatoid arthritis, and fibromyalgia. Id. ¶ 8. She has been teaching elementary school in the New York City public schools since September 1995. Id.

¶ 7. In 2015, after a medical transfer, Plaintiff was assigned to P.S. 36, where Bellafatto was the principal. Id. ¶ 10.

Prior to coming to P.S. 36, Plaintiff had always received "Satisfactory or Effective" annual performance ratings. Id. ¶ 9. For the 2015-2016 school year, Bellafatto gave Plaintiff an "Unsatisfactory" performance rating, after Bellafatto "found out [that] she would have to pay Plaintiff's salary from her school budget." Id. ¶ 11. Plaintiff's Unsatisfactory rating was later overturned in June 2016 with the help of her union representative. Id. Plaintiff received lower performance evaluations from Bellafatto than she had received from prior supervisors. Id. ¶ 24. At the end of the 2015-2016 school year, Bellafatto also gave Plaintiff a disciplinary letter for excessive absences, despite the absences being medically justified. Id. ¶ 12. On October 31, 2016, Bellafatto told Plaintiff that "she should go to church at night," like Bellafatto did. Id. ¶ 15.

Plaintiff was granted FMLA "intermittent leave" from December 8, 2016, through December 8, 2017. Id. ¶ 13. Notwithstanding Plaintiff's FMLA leave, Bellafatto still issued disciplinary notices to Plaintiff for "time and attendance issues," related to Plaintiff's health conditions and her religious observance of Catholic holidays. Id. ¶ 14.

In September 2017, Bellafatto sent Plaintiff to the DOE medical unit on the first day of school even though Plaintiff was on protected FMLA leave. Id. ¶ 18. When Plaintiff arrived at the school the following day, Bellafatto told her that she was not allowed to stay and placed her into the "ATR pool" and told her to report to a different school. Id. Bellafatto was forced to accept Plaintiff back at the school after intervention by a union representative. Id. The DOE Medical Board found Plaintiff fit for duty. Id.

On October 31, 2017, Bellafatto "interrogated Plaintiff about her religious beliefs by questioning her family name being Blumstein-Terrella," asking why Plaintiff was "taking off

Catholic holidays when she was Jewish." Id. ¶ 16. Bellafatto also claimed that Plaintiff had failed to timely submit the necessary paperwork to take religious leave for All Saints Day (November 1, 2017), even though Plaintiff had submitted the paperwork several weeks beforehand. Id. Although she did not hear back from Bellafatto as to whether Plaintiff could get religious leave for November 1, 2017, Plaintiff took the day off anyway. Id. Bellafatto granted requests made by other teachers for days off for religious observance, while Bellafatto did not respond to Plaintiff's requests for days off for religious holidays. Id. ¶ 17.

On October 19, 2017, Bellafatto told Plaintiff that her FMLA intermittent leave was terminated and that her leave should never have been approved. Id. ¶ 19. She also told Plaintiff "that if [she] was going to be out sick, then [she] should just resign." Id. Defendants miscalculated the number of days Plaintiff was entitled to for her FMLA intermittent leave and failed to inform her how her FMLA intermittent leave was being calculated. Id.

In October 2017, Bellafatto also refused to give Plaintiff a bathroom key to two second floor bathrooms, which led to numerous bathroom accidents because Plaintiff's Crohn's disease required immediate access to a bathroom. Id. ¶ 22. Bellafatto also made Plaintiff travel on school bus trips, although Plaintiff had informed Bellafatto that yellow buses and their lack of a bathroom was difficult for Plaintiff because of her Crohn's disease. Id. By contrast, Bellafatto allowed another teacher without any known medical issues to stay behind with students who did not attend a trip. Id. Bellafatto gave Plaintiff assignments that required excessive walking and stair climbing despite Plaintiff's arthritis and was also denied many teacher training sessions that she requested to attend. Id.

On December 8, 2017, Bellafatto "improperly charged" Plaintiff with an FMLA absence instead of a "religious observance day," which "resulted in a negative impact" to Plaintiff's

compensation. Id. ¶ 23. On December 22, 2017, Plaintiff "was called to a disciplinary meeting" without a union representative, where Bellafatto told Plaintiff "not to be absent anymore and if Plaintiff's cancer was back, she should resign, take a medical leave or go on disability." Id. ¶ 26. Bellafatto also told Plaintiff that she "went to doctors too often," "did not even look sick and should see doctors during her vacation time." Id.

On April 12, 2018, Plaintiff submitted a grievance challenging "one of her observations, and hours later she received a disciplinary notice" from Bellafatto "about attendance." Id. ¶ 28. On April 13, 2018, during a disciplinary meeting, Bellafatto told Plaintiff that she was a "financial burden" to the school due to her "high salary and her time off for disability, which required [Bellafatto] to hire substitutes frequently." Id. ¶ 29. "Because Plaintiff's salary advanced with her seniority and her years of service equate to top salary," Bellafatto's repeated comments about Plaintiff's high salary "were a code word for age." Id. Bellafatto also stated that because of Plaintiff's salary, she could not hire school aides, nor buy furniture or supplies for the school. Id. Bellafatto also said that "she did not need someone like Plaintiff on her payroll due to her salary and disabilities," and told Plaintiff that she should "resign, apply for disability retirement, or take medical leave" because Bellafatto did not "foresee" Plaintiff's health improving. Id.

Senior teachers at P.S. 36 "often also received disciplinary letters" to their files while younger teachers "appear[ed] to get preferential treatment at the school." Id. ¶ 30. Bellafatto "showed a pattern of forcing out older and/or disabled staff members, including Eileen Horowitz (paraprofessional about 60), Janet Pacifico (teacher about 60), Denise Esposito Rider (teacher over 60), Nicole McMahon (teacher about 50), Deborah Bossert (teacher about 50), and Stacey Ulahel (pupil accounting secretary about 60)." Id.

On April 16, 2018, Plaintiff had a grievance arbitration meeting challenging an observation report from Bellafatto. Id. ¶ 31. After the meeting, Plaintiff received a disciplinary letter in her file from Bellafatto "for time and attendance issues." Id. The disciplinary letter referenced FMLA approved dates, bereavement time, and days off for religious observance. Id. Bellafatto then initiated a time and attendance disciplinary proceeding against Plaintiff. Id.

In May 2018, other teachers, Lisa Sefcik and Erica Grigoli D'Onofrio, asked for May 10, 2018 off, as a religious observance for Ascension Thursday, May 10, 2018, and they received the day off from Bellafatto. Id. ¶ 17. Plaintiff never received a response to her request to take May 10 off due to the religious holiday. Id.

On May 23, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"). Id. ¶ 33. She also filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on September 10, 2018, at which time the DOE was notified of the SDHR discrimination complaint as well. Id.

Despite her complaint, on or about October 17, 2018, DOE served time and attendance disciplinary charges on Plaintiff, which resulted in a $1,500 fine against her. Id. ¶ 34. During discovery for the hearing, Plaintiff discovered that she was "problem coded" in the DOE's system "*before* the time and attendance hearing and without notice." Id. ¶ 35 (emphasis in original). Plaintiff alleges that the DOE failed to remove this problem code even after Plaintiff was fully exonerated from her charges. Id.

On December 8, 2018, Plaintiff filed an FMLA leave request for intermittent leave. Id. ¶ 36. Plaintiff alleges that she was employed full-time for the previous year and had performed 1,250 hours of service during the 12-month period immediately preceding this requested leave. Id. On December 21, 2018, Bellafatto would not let Plaintiff go home even though she was

"extremely sick and feverish" and despite having provided "coverage" for another sick teacher that same day. Id. ¶ 37. Bellafatto denied Plaintiff's FMLA leave request in January 2019, in an untimely response that exceeded the five-day response period under the FMLA. Id. ¶ 38. Plaintiff received her right to sue letter on February 12, 2019, and filed the instant federal action on April 19, 2019. Id. ¶ 39.

On August 7, 2019, Plaintiff filed a Notice of Claim against the DOE alleging "*inter alia* retaliation after filing her SDHR and EEOC discrimination complaints." Id. ¶ 44. Plaintiff also alleges that the Office of the Comptroller of the City of New York acknowledged receipt of Plaintiff's Notice of Claim on August 13, 2019. Id.

In the fall of 2019, Plaintiff was suspended and removed from teaching and was assigned laborious tasks, like moving heavy furniture and cleaning the library, until the pandemic hit in March 2020. Id. ¶ 47. After Plaintiff complained about these tasks, Bellafatto "gave her even more degrading and laborious tasks." Id. Plaintiff faced public shame and humiliation due to her colleagues questioning her on why she as not teaching and the knowledge that when former parents were inquiring about her whereabouts Bellafatto told them that she no longer worked at the school. Id. ¶ 48.

On January 20, 2020, Plaintiff filed a third FMLA leave request. Id. ¶ 50. This request was denied on February 27, 2020. Id. Plaintiff alleges that her union representative, James Schlacter, reviewed her eligibility and confirmed that she was eligible for the leave. Id.

In September 2020, Plaintiff was reassigned from working at school to working at home and had to check-in from home on a daily basis. Id. ¶ 51. On September 11, 2020, during remote instruction and without prior notice, Plaintiff was stripped of her credentials. Id. ¶ 52. That same

day, Plaintiff received a "transfer assignment letter" and was "removed from receiving school emails." Id.

On July 29, 2021, Plaintiff applied for a reasonable accommodation to work from home for the 2021-2022 school year due to her history of cancer and autoimmune issues. Id. ¶ 55. Plaintiff had a doctor's letter and a letter from a union attorney. Id. Plaintiff was vaccinated for COVID-19, but she could not produce the antibodies that would protect her from the virus because of her compromised immune system. Id. The DOE denied this request on September 19, 2021. Id. ¶ 56. "[S]imilarly situated teachers with autoimmune conditions have received remote work accommodations." Id.

As an alternative, Plaintiff was "forced to apply" for and received a medical sabbatical, retroactive to August 1, 2021, until January 1, 2022, during which time she received partial pay. Id. ¶ 57. After her medical sabbatical expired, Plaintiff applied for a "restoration of health" from January 1, 2022, to June 30, 2022. Id. ¶ 58. Plaintiff reapplied for a "restoration of health" from September 1, 2022, until June 30, 2023, and from September 1, 2023, until February 1, 2024. Id. ¶¶ 59-60. Plaintiff has not been paid since expiration of her medical sabbatical in January 2022. Id. ¶ 61. As a result, she has lost "2.5 years of salary, full benefits, TDA contributions that were maxed out, and pensionable time." Id.

B. Procedural History

On April 19, 2019, Plaintiff initiated this action by filing a *pro se* complaint against Defendants, asserting claims for (1) interference and retaliation under the FMLA; (2) disability discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (3) age discrimination, retaliation, and hostile work

environment under the Age Discrimination in Employment Act of 1967 ("ADEA"), the

NYSHRL, and the NYCHRL; and (4) religious discrimination, retaliation, and hostile work

environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), the NYSHRL, and the

NYCHRL. See ECF No. 2 at 3-4. Plaintiff retained counsel, and on July 16, 2019, Plaintiff

requested the Court's permission to file an amended complaint. See ECF Nos. 9-10. The Court

granted Plaintiff's request, and Plaintiff filed her first amended complaint on September 4, 2019.

ECF Nos. 11-12.

On March 2, 2020, Defendants filed a partial motion to dismiss the first amended

complaint. ECF No. 18. Defendants moved for dismissal of all of Plaintiff's claims except for

her claim of retaliation under the FMLA. See generally ECF Nos. 18, 20. Plaintiff filed her

opposition to the motion to dismiss on April 3, 2020. ECF No. 19. Defendants filed a reply on

April 17, 2020. ECF No. 20.

On August 9, 2023, Judge Carter issued an Opinion and Order granting Defendants'

motion in part and denying it in part. See ECF No. 22 at 23. The Court dismissed Plaintiff's Title

VII, NYSHRL, and NYCHRL claims, alleging the existence of a hostile work environment

premised on Plaintiff's religion; her NYSHRL and NYCHRL claims alleging a hostile work

environment based on her disability; Plaintiff's ADEA, NYSHRL, and NYCHRL claims

alleging a hostile work environment based on age; and her NYSHRL and NYCHRL claims

alleging retaliation based on age, religion, and disability. Id. at 6. All of those claims as to both

Defendants[1] were deemed abandoned and dismissed on that basis, because Plaintiff had failed to

oppose Defendants' motion to dismiss as to those claims.

---

[1] The Title VII and ADEA claims were only asserted against the DOE. See ECF No. 12
¶¶ 40-42, 43-45.

The Court dismissed Plaintiff's remaining NYSHRL and NYCHRL claims against the DOE because Plaintiff failed to plead that she had filed the required Notice of Claim. See id. at 6-7. The Court also concluded that Plaintiff's Title VII, ADA, and ADEA claims against the DOE premised on conduct pre-dating July 27, 2017, were time barred. Id. at 8. As to Plaintiff's FMLA interference claims against Defendants, the Court concluded that Plaintiff had failed to plead that she was eligible for FMLA intermittent leave when her leave was terminated on October 19, 2017. Id. at 9-10. The Court also dismissed Plaintiff's religious-discrimination claims under Title VII against the DOE and her NYSHRL and NYCHRL claims against both Defendants, because Plaintiff's allegations "did not support an inference that Plaintiff was discriminated against because of her religion."[2] Id. at 12-13. The Court also dismissed Plaintiff's age-discrimination claims under the ADEA against the DOE and the NYSHRL and NYCHRL claims against both Defendants because they were "completely devoid of factual support," and no allegation tied any action by Defendants to Plaintiff's "age or seniority." [3] Id. at 14-15. Additionally, the Court dismissed Plaintiff's hostile work environment claim under the ADA against the DOE because Plaintiff failed to allege how the incidents were related to her disability. See id. at 19-20.

The Court denied Defendants' motion to dismiss as it pertained to Plaintiff's disability-discrimination claims under the ADA, the NYSHRL, and the NYCHRL. Id. at 18. The Court

---

[2] The Title VII religious-discrimination claim was asserted against only the DOE. See ECF No. 12 ¶¶ 43-45. The NYSHRL and NYCHRL religious-discrimination claims were asserted against both Defendants. See id. ¶¶ 46-51.

[3] The ADEA age-discrimination claim was asserted against only the DOE. See ECF No. 12 ¶¶ 40-42. The NYSHRL and NYCHRL age-discrimination claims were asserted against both Defendants. See id. ¶¶ 46-51.

also denied the motion as to Plaintiff's retaliation claims under Title VII, the ADEA, and the ADA. Id. at 21, 23.

The Court directed Plaintiff to indicate within 14 days of the opinion on the motion to dismiss whether she would seek leave to file an amended complaint. Id. at 23. In a joint status letter filed on August 23, 2023, Plaintiff indicated that she intended to move for leave to file an amended complaint. ECF No. 24 at 1. Plaintiff filed her motion for leave to file a second amended complaint on October 3, 2023. ECF Nos. 31-33.

Plaintiff's proposed second amended complaint attempts to revive all of the claims that were previously dismissed, except for those claims dismissed as time barred. See ECF No. 33-1. Defendants opposed Plaintiff's motion on November 21, 2023. ECF No. 41.

## LEGAL STANDARD

Under Rule 15, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). This "permissive standard," as the Second Circuit has recognized, "is consistent with [the] strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks and citation omitted). Under Rule 15, the "only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)); see also Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 283 (2d Cir. 2000).

Leave may be denied as futile if the proposed amended pleading could not withstand a motion to dismiss. See Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (internal citation omitted); Griffith-Fenton v. Coldwell Banker Mortg., No. 13-CV-7449 (VB), 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014). In other words, if a proposed

claim would be subject to "immediate dismissal" for failure to state a claim, the court should not permit the amendment. <u>Jones v. N.Y. State Div. of Mil. & Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir. 1999). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. A complaint is insufficient where it contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Id.</u>; <u>Henderson v. Sanders</u>, No. 18-CV-8473 (LTS) (BCM), 2020 WL 5946455, at *2 (S.D.N.Y. Oct. 7, 2020).

In opposing a motion for leave to amend a complaint, "[s]imply alleging that the plaintiff could have moved to amend earlier than she did . . . is insufficient to demonstrate undue delay." <u>Francisco v. Abengoa, S.A.</u>, 559 F. Supp. 3d 286, 312 (S.D.N.Y. 2021) (quoting <u>Agerbrink v. Model Serv. LLC</u>, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted. <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993). A district court has broad discretion in ruling on a motion for leave to amend. <u>See e.g.</u>, <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2d Cir. 2000).

## DISCUSSION

### A. <u>Notice of Claim</u>

As the Court explained in its opinion resolving Defendants' motion to dismiss, Plaintiff had failed to allege in her first amended complaint whether she had filed a Notice of Claim—a defect that was fatal to her NYSHRL and NYCHRL claims against the DOE.  <u>See</u> ECF No. 22 at 7. Upon that basis, the Court dismissed Plaintiff's NYSHRL and NYCHRL claims against the

DOE. [4] Id. In her proposed second amended complaint, Plaintiff now alleges that on August 7, 2019, she "filed a Notice of Claim against Defendant NYCDOE alleging *inter alia* retaliation after filing her New York State Division of Human Rights ("NYSDHR") and EEOC discrimination complaints." ECF No. 33 ¶ 44. Plaintiff also alleges that the "Office of the Comptroller of the City of New York acknowledged receipt of Plaintiff's notice of claim" on August 13, 2019. Id.

Defendants argue that Plaintiff should not be allowed to amend her NYSHRL and NYCHRL claims to allege the filing of a Notice of Claim because she "offers no excuse for her delay" in raising the allegation. See ECF No. 41 at 5-6. But "mere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 567 F. Supp. 3d 429, 428 (S.D.N.Y. 2021) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)). Defendants have made no showing of bad faith and Defendants will not be unduly prejudiced if Plaintiff is permitted to amend her claims to allege that she filed a Notice of Claim.

In her proposed second amended complaint, Plaintiff has essentially restated her NYSHRL and NYCHRL claims. She has added new allegations pertaining to her filing of a Notice of Claim, which is more akin to a procedural rather than substantive element of her state and city claims. See Dilworth v. Goldberg, No. 10-CV-2224 (JMF) (GWG), 2013 WL 5745989, at *2 (S.D.N.Y. Oct. 23, 2013) (describing the Notice of Claim as a prerequisite to suit). Defendants, however, have been on notice of the factual allegations underlying Plaintiff's NYSHRL and NYCHRL claims since the litigation commenced. Cf. Bloom v. N.Y.C. Bd. of Educ., No. 00-CV-2728 (HBP), 2004 WL 639613, at *6-7 (S.D.N.Y. Mar. 30, 2004) (granting

---

[4] Plaintiff's NYSHRL and NYCHRL claims against Bellafatto were not dismissed on this basis. ECF No. 22 at 7.

leave to amend after finding that there was no prejudice to the defendant when plaintiff filed a late Notice of Claim where the defendants had actual knowledge of the facts constituting plaintiff's claims and the defendants made no showing that they would be prejudiced). Additionally, this case is still in a very early procedural posture, as discovery has not commenced. Defendants would thus not be required to expend "significant additional resources to conduct discovery and prepare for trial," if amendment were permitted. United States ex rel. Raffington, 567 F. Supp. 3d at 428 (quoting Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008)).

Moreover, as discussed, see supra Section C.4, permitting Plaintiff leave to amend her NYSHRL and NYCHRL claims to add the date of her Notice of Claim would not be futile, because she has otherwise pled valid hostile work environment claims based on her disability. [1] Defendants argue that the Notice of Claim allegation, ECF No. 33-1 ¶¶ 44, 78, 82, does not revive the discrimination and hostile work environment claims because her allegation indicates that she alleged only "retaliation" complaints in her Notice of Claim. See ECF No. 41 at 7. Plaintiff's allegation states that she filed a Notice of Claim "alleging inter alia retaliation after filing her SDHR and EEOC discrimination complaints." ECF No. 33-1 ¶ 44. That allegation suggests that the Notice of Claim may have raised more than retaliation given the "inter alia" language suffices, and it suffices to adequately plead that she filed a Notice of Claim. Defendants cite to no case that requires the allegation in the complaint to detail the full contents of the Notice of Claim for the NYSHRL and NYCHRL claims to be adequately pled.

Defendants argue that permitting Plaintiff leave to add her allegations pertaining to the filing of a Notice of Claim would be "improper under the law of the case doctrine." See ECF No. 41 at 6-7. That doctrine instructs that "when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case.'" 7 West 57th St. Realty Co., LLC v. Citigroup, Inc., 314 F. Supp. 3d 497, 515-16 (S.D.N.Y. 2018) (quoting DiLaura v. Power Auth. of New York, 982 F.2d 73, 76 (2d Cir. 1992)). The "law of the case" doctrine, which itself is "discretionary" and does not limit "the court's power" to reopen an issue that has been decided, is inapplicable here. United States v. Martinez, 987 F.2d 920, 923 (2d Cir. 1993). The Court concluded that Plaintiff had failed to state a claim, dismissed without prejudice, and expressly invited Plaintiff to seek leave to amend her complaint. If Plaintiff were permitted to amend her complaint, the Court would therefore not be reversing itself on any issue of law, because the Court did not dismiss any claim with prejudice and did not "make any definitive legal determinations."[5] See Underwood v. Roswell Park Cancer Inst., No. 15-CV-684 (FPG), 2017 WL 1593445, at *6 (W.D.N.Y. May 2, 2017) (concluding that the law of the case doctrine did not apply when the court previously held that certain allegations were not sufficient to state a claim for relief and dismissed without prejudice); ECF No. 22 at 23.

In sum, I recommend that Plaintiff be permitted to amend her disability related claims against the DOE under the NYSHRL and NYCHRL to allege the filing of a Notice of Claim. Plaintiff's disability related claims against Bellafatto under the NYSHRL and NYCHRL survived Defendants' prior motion to dismiss and should be restated in Plaintiff's second amended complaint. As explained herein, Plaintiff's age and disability related claims under the NYSHRL and NYCHRL fail for other reasons. Lastly, Plaintiff should be permitted to plead her retaliation-related NYSHRL and NYCHRL claims because Defendants' lone argument for denial

---

[5] For this reason, Defendants' reliance on Richard v. New York City Department of Education is misplaced. In that case, the Court's dismissal of the claims for failure to file a Notice of Claim was with prejudice. Id., No. 16-CV-957 (MKB), 2022 WL 4280561, at *11 (S.D.N.Y. Sept. 15, 2022).

of leave to amend concerns the failure to allege the filing of a Notice of Claim and Plaintiff has now fixed that deficiency.

B. Statute of Limitations

The Court previously concluded that Plaintiff's claims under Title VII, the ADA, and the ADEA based on conduct pre-dating July 27, 2017 were time barred. See ECF No. 22 at 8. Plaintiff has not added any new factual allegations to make these previously dismissed claims timely.[6]

Plaintiff's allegations concerning the filing of a Notice of Claim suffice to revive her NYSHRL and NYCHRL claims against the DOE, but only as to conduct that occurred after April 19, 2018. The statute of limitations for claims brought against the DOE under the NYSHRL and the NYCHRL is one year. Richard v. N.Y.C. Dep't of Educ., No. 16-CV-957 (MKB), 2022 WL 4280561, at *38 (S.D.N.Y. Sept. 15, 2022) (citing N.Y. Educ. L. § 3813(2-b)). Plaintiff commenced this action on April 19, 2019. ECF No. 1. Therefore, a NYSHRL and NYCHRL claim based on conduct that occurred before April 19, 2018 would be barred by the statute of limitations. As such, I recommend that Plaintiff be permitted to amend her NYSHRL and NYCHRL claims against the DOE to allege the filing of a Notice of Claim, but only to the extent those claims are based on conduct that occurred after April 19, 2018.

---

[6] Plaintiff includes allegations in her proposed second amended complaint relating to conduct that occurred prior to July 27, 2017. See e.g., ECF No. 33-1 ¶¶ 11, 12, 14. Although any claims based on events that occurred prior to July 27, 2017 are time-barred, these factual allegations may be considered by the Court "as background evidence in evaluating the merits of [Plaintiff's] discrimination claims." ECF No. 22 at 8 (quoting Davidson v. LaGrange Fire Dist., 535 F. App'x 838, 839 (2d Cir. 2013)).

C.  Futility – Failure to State a Claim

1.  *FMLA Interference Claims*

The Court dismissed Plaintiff's FMLA interference claim because she failed to plead that she was eligible for FMLA intermittent leave during the applicable period for her first and second FMLA leave requests. See ECF No. 22 at 9. Plaintiff now attempts to correct that deficiency for her second FMLA leave request by alleging that she was back from her first FMLA leave on December 8, 2017, was employed full-time between December 8, 2017, and December 8, 2018, and that she performed 1,250 hours of service during the 12-month period immediately preceding her requested leave. See ECF No. 33-1 ¶ 36. Plaintiff also adds an allegation concerning a new (third) FMLA leave request that she filed on January 20, 2020. See ECF No. 33-1 ¶ 50.

As to Plaintiff's first FMLA leave request, Defendants argue that Plaintiff did not add any new allegations to address her eligibility for FMLA leave and thus granting leave to amend would be futile for her FMLA claim based on the leave request from December 8, 2016, to December 8, 2017. See ECF No. 41 at 10. As to Plaintiff's second FMLA leave request (beginning December 8, 2018), Defendants argue that Plaintiff has not adequately alleged that she suffered from a "serious health condition," as required for FMLA eligibility. Id. at 11. Finally, as to Plaintiff's third FMLA leave request (filed on January 20, 2020), Defendants argue that Plaintiff has failed to allege that she worked 1,250 hours in the preceding 12-month period, as required to establish FMLA eligibility. Id. at 12.

For an FMLA interference claim under 29 U.S.C. § 2615(a)(1), a plaintiff must adequately plead: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied

16

benefits to which she was entitled to under the FMLA. Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004). "To be eligible for FMLA leave, an employee must have been employed for at least twelve months by the employer from whom she is requesting leave, and she must have worked at least 1,250 hours with that employer in the twelve months prior to the beginning of her medical leave. Arroyo-Horne v. City of New York, 831 F. App'x 536, 539 (2d Cir. 2020) (citing 29 U.S.C. § 2611(2)(A)).

     To qualify for FMLA leave, an employee must have a "serious health condition" that makes the employee unable to perform the functions of their employment. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care . . . or  . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11); see Pollard v. N.Y. Methodist Hosp., 861 F.3d 374, 379 (2d Cir. 2017). Regulations from the Department of Labor explain that "treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition," but does not include "routine physical examinations, eye examinations, or dental examinations." 29 C.F.R. § 113(c). In addition, "continuing treatment" includes "a course of prescription (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen)." Id. But, a "regimen of continuing treatment that includes the taking of over-the-counter medications . . . that can be initiated without a visit to a health care provider is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." Id. Further, "incapacity" under the statute includes an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). The regulations provide further clarification as to what constitutes incapacity due to "continuing treatment by a health care provider," a "chronic

serious health condition," a "permanent long-term" condition, or a condition "requiring multiple treatments." See 29 C.F.R. § 825.115(a), (c), (e).

As to her first FMLA leave request, Plaintiff has again failed to allege her eligibility for FMLA leave. Plaintiff alleges that she was granted FMLA intermittent leave from December 8, 2016, through December 8, 2017. ECF No. 33-1 ¶ 13. Plaintiff also alleges that her leave was terminated on October 19, 2017, when Bellafatto told her that the leave "should never had been approved." Id. ¶ 19. There are no allegations from which to infer that Plaintiff worked 1,250 hours in the 12-month period prior to the December 8, 2016 request. Nor has Plaintiff alleged that she worked full-time during the 12-month period preceding that request. See id. ¶¶ 7, 13; Bulmer v. Yellow Freight Sys., Inc., 213 F.3d 625, at *3 (2d Cir. 2000) (stating that "eligibility is a threshold issue which has to be proved by the plaintiff in order for him to be entitled to relief" for FMLA interference claims). As such, any FMLA interference claim based on Plaintiff's leave that ended on October 19, 2017, is not properly pled and should remain dismissed.

As to Plaintiff's second FMLA leave request beginning December 8, 2018, Plaintiff has remedied the deficiency previously identified by the Court. See ECF No. 22 at 9. The proposed second amended complaint now alleges that Plaintiff was employed full-time between December 8, 2017, until she made her second FMLA leave request on December 8, 2018. ECF No. 33-1 ¶ 36. Additionally, the proposed complaint alleges that Plaintiff worked 1,250 hours during the 12-month period immediately preceding her December 8, 2018 leave request. See id.

Nevertheless, Defendants argue that Plaintiff has failed to adequately plead her eligibility for FMLA leave because her allegations do not establish that she has a "serious health

condition."[7] In her proposed second amended complaint, Plaintiff includes her medical conditions, which are "a history of breast cancer, Crohn's and Celiac disease, Hashimoto, Rheumatoid Arthritis, and Fibromyalgia." See ECF No. 33-1 ¶ 8. Plaintiff alleges that her "conditions have caused her to be absent from school on an intermittent basis for various necessary medical treatments for her disabilities." Id. But Plaintiff provides no details about specific ongoing medical care she received or specific instances where her illnesses caused her to be absent for medical treatment.

Plaintiff, however, has alleged that she suffers from the types of conditions Congress was considering when they enacted the FMLA. The legislative history for the FMLA makes clear that Congress intended the term "serious health condition" to include "most cancers, . . . severe arthritis, [and] serious nervous disorders . . . ." Boyce v. N.Y.C. Mission Soc., 963 F. Supp. 290, 298 (S.D.N.Y. 1997) (quoting H.R. Rep. No. 8, 103rd Cong., 1st Sess., pt. 1 at 29 (1993)). Plaintiff alleges that she suffers from fibromyalgia, which is a central nervous system disorder characterized by "chronic widespread pain." See Daniel J. Clauw et al., The Science of Fibromyalgia, 86(9) Mayo Clinic Proceedings, 907, 907 (2011). Plaintiff also suffers from Hashimoto's disease and Crohn's disease, two illnesses that are generally understood to be permanent and require ongoing care. See 29 U.S.C. § 825.115(c) (A disease is considered chronic when they "continue over an extended period of time."); see e.g. Dana L. Mincer & Ishwarlal Jialal, Hashimoto Thyroiditis, National Library of Medicine available at https://www.ncbi.nlm.nih.gov/books/NBK459262/ (describing the disease as chronic and

---

[7] Because Plaintiff's first amended complaint failed to establish her eligibility for FMLA leave through the employment and hours requirement, the Court did not examine whether Plaintiff's allegations sufficed to plead the existence of a "serious health condition." See ECF No. 22 at 9-10.

describing the treatment as requiring ongoing thyroid hormone replacement and medication); Johan Burisch & Pia Munkholm, <u>The Epidemiology of Inflammatory Bowl Disease</u>, Scand J. Gastroenterol. 2015 50(8): 942-51 (describing Crohn's disease as a chronic relapsing disorder). Given the nature of Plaintiff's illnesses, the Court can plausibly infer that Plaintiff has alleged the existence of a serious health condition. <u>See De Figueroa v. New York</u>, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019) (analyzing FMLA interference claim where plaintiff who suffered from Crohn's disease was assumed to have a serious health condition); <u>Grive v. Clark Cnty.</u>, No. 17-CV-3109 (JAD) (VCF), 2019 WL 12875432, at *1 (D. Nev. Dec. 2, 2019) ("[Plaintiff] obtained approved intermittent leave under the [FMLA] for her Fibromyalgia and Celiac disease."); <u>Sawa v. RDG-GCS Joint Ventures III</u>, No. 15-CV-6585, 2017 WL 3033996, at *3 (E.D. Pa. July 14, 2017) (discussing plaintiff's FMLA leave due to the side-effects of a Hashimoto's flare up); <u>cf. Dighello v. Thurston Foods, Inc.</u>, 307 F. Supp. 3d 5, 19 (D. Conn. 2018) (finding that asthma was a serious medical condition that satisfied FMLA eligibility based on legislative history despite plaintiff's failure to allege details supporting the ongoing nature of her condition after alleging a specific, singular, emergency treatment). Because I recommend that Plaintiff be given leave to amend some of her claims, Plaintiff can take that opportunity to add additional allegations to her FMLA interference claim, to further support a finding that she suffers from a "serious health condition" that requires continuing medical care, as defined by the regulations.[8]

---

[8] Defendants also fleetingly argue that Plaintiff did not provide "the DOE with the required information to support her leave request in December 2018." ECF No. 41 at 11. But the case Defendants rely on concerns a plaintiff that did not provide the employer the anticipated duration of the requested FMLA leave, despite the employer's request for that information prior to the denial of the leave. <u>Horsting v. St. John's Riverside Hosp.</u>, No. 17-CV-3230 (CS), 2018 WL 1918617, at *4-5 (S.D.N.Y. Apr. 18, 2018). Here, Defendants make no argument that Plaintiff failed to give the school an anticipated end date for her leave or that the school requested that information before it denied her leave.

Turning to Plaintiff's third leave request, Plaintiff alleges that she made the request on January 20, 2020, and it was denied on February 27, 2020. See ECF No. 33-1 ¶ 50. Plaintiff also alleges that "Staten Island borough [officer] James Schlacter reviewed Plaintiff's eligibility and confirmed that Plaintiff was eligible for FMLA leave." Id. Plaintiff, however, has not alleged that she worked 1,250 hours in the 12 months preceding her January 2020 request. As already determined, Plaintiff's failure to allege facts to support an inference that she met the hours requirement is fatal to her FMLA interference claim. See ECF No. 22 at 9-10. Although Plaintiff states that Schlacter reviewed her "eligibility" and confirmed she was "eligible for FMLA leave," there are no factual allegations in the proposed complaint from which to plausibly infer that Schlacter (1) had the authority to make such a determination, or (2) assessed Plaintiff's request to determine that she met the hours requirement. Given Plaintiff's failure to allege that she satisfied the hours requirement, an FMLA interference claim premised on Plaintiff's leave request on January 20, 2020, fails for the same reason that her first leave request, from December 8, 2016, fails.

In sum, Plaintiff has not sufficiently pled that she was eligible for FMLA leave, as required to state a FMLA interference claim for her first and third leave requests (from December 2016 and January 2020, respectively). However, Plaintiff has adequately alleged an FMLA interference claim based on her second FMLA leave request (from December 2018). Plaintiff, however, should be instructed to supplement her allegations concerning her serious health condition, as discussed herein.

### 2. Religious-Discrimination claims under Title VII, the NYSHRL, and the NYCHRL

The Court dismissed Plaintiff's religious-discrimination claims under Title VII, the NYSHRL, and the NYCHRL because the first amended complaint did not include sufficient

factual information to "support an inference that Plaintiff was discriminated against because of her religion." ECF No. 22 at 12. Defendants raise several arguments in opposition to permitting Plaintiff leave to amend these claims. Defendants argue that Plaintiff's proposed amendments are futile because she still fails to allege that she was prevented from observing her religious beliefs or that she was disciplined because of them, and also fails to allege discriminatory animus based on a religious bias by Defendants against Catholics. See ECF No. 41 at 12-14.

Title VII prohibits an employer from discriminating "against any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). The word "religion" is defined to "include[ ] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [a] religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

To establish a prima facie case of discrimination, a plaintiff must plead that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she has pleaded facts that suggest an inference of a discriminatory motivation. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory factual matter sufficient to "'nudge[] [its] claims'. . . 'across the line from conceivable to plausible.'" E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). Thus, to survive a motion to dismiss, a plaintiff asserting a Title VII discrimination claim must plausibly allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015). Claims

arising under Title VII and the NYSHRL may be analyzed together. See Algarin v. NYC Health + Hosps. Corp., No. 22-CV-8340 (JLR), 2023 WL 4157164, at *6 (S.D.N.Y. June 23, 2023) (citing Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019)); see also Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims.").

Under the NYCHRL, it is "an unlawful discriminatory practice for an employer or an agent thereof to . . . discriminate against such person in compensation or in terms, conditions, or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). NYCHRL claims must be reviewed "separately and independently" from any other claims and construed "broadly in favor of discrimination plaintiffs[.]" Mihalik v. Credit Agricole Cheuvreux N. Am. Inc., 715 F.3d 102, 109 (2d Cir. 2013). "Ultimately, however, as with Title VII, the NYCHRL 'is not a general civility code,' and where a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' or the defendant demonstrates that the alleged conduct did not exceed 'petty slights or trivial inconveniences,' plaintiff's claim must fail." Livingston v. City of New York, 563 F. Supp. 3d 201, 234-35 (S.D.N.Y. 2021) (quoting Ramirez v. Michael Cetta Inc., No. 19-CV-986 (VEC), 2020 WL 5819551, at *18 (S.D.N.Y. Sept. 30, 2020)).

The Court dismissed Plaintiff's religious-discrimination claims under Title VII, the NYSHRL, and the NYCHRL, because Plaintiff's allegations did not support a plausible inference that she was discriminated against because of her religion. ECF No. 22 at 12-13. In dismissing those claims, the Court determined that Plaintiff's allegations did "not give rise to an inference of a discriminatory animus" on the part of Defendants. Id. As the Court explained,

Plaintiff alleged that other Catholic employees were allowed to take certain religious holidays off and "[t]he fact that other Catholic employees requested and received permission to observe these holidays suggest[ed] that Plaintiff's requests were not ignored because of her religion, but may have been overlooked or ignored for some other reason, such as administrative incompetence or personal animus." Id. Additionally, the Court noted that Plaintiff had not alleged more favorable treatment of employees who were not Catholic or that Defendants made "invidious comments" about employees who were Catholic. Id. at 12-13.

In her first amended complaint, Plaintiff had alleged that Bellafatto "interrogated" her about her family name being Blumstein-Torrella and asked her to elaborate on her religious beliefs. ECF No. 12 ¶ 16. Plaintiff further alleged that Bellafatto had claimed that she did not submit the necessary paperwork to take off All Saints Day on November 1, 2017, when in fact she had submitted the paperwork weeks in advance of the religious holiday. Id. Plaintiff also alleged that she never received a response to her request to take off Ascension Thursday (May 10, 2018). Id. ¶ 18. Plaintiff also alleged that Lisa Sefcik, another teacher, was granted her request to observe Ascension Thursday. Id.

In her proposed second amended complaint, Plaintiff adds that even though she did not receive permission to take the day off, she nonetheless took off All Saints Day on November 1, 2017, and her pay, although initially "docked," was subsequently "fixed and restored." ECF No. 33 ¶ 16. She also adds that in addition to Lisa Sefcik, Erica Grigoli D'Onofrio also received permission to observe Ascension Thursday on May 10, 2018. Id. ¶ 17. Plaintiff now also alleges that "Bellafatto perceived Plaintiff as Jewish and interfered and actively discouraged Plaintiff's observance of Catholic religious days." ECF No. 32 at 8; see also ECF No. 33-1 ¶¶ 16-17.

None of Plaintiff's new allegations fix the deficiency previously identified by the Court. Plaintiff has still failed to allege facts from which to plausibly infer that animus due to her Catholic faith was "a motivating factor for any employment practice." Vega, 801 F.3d at 85-86 (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003)). A plaintiff can plausibly allege that there was a discriminatory reason for the employment practice through "direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." Small v. N.Y.C. Dep't of Educ., 650 F. Supp. 3d 89, 98 (S.D.N.Y. 2023) (citations omitted). Invidious comments about members of plaintiff's protected class is evidence giving rise to an inference of discrimination. See D'Cunha v. Northwell Health Sys., No. 22-CV-0988 (MKV), 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (quoting Littlejohn, 795 F.3d at 312). Likewise, allegations that a plaintiff's performance was criticized in "religiously degrading terms" or that employees not in the plaintiff's protected group received "more favorable treatment" also support a plausible inference of discrimination. Id.

Plaintiff has no allegations to support an inference that Defendants' conduct was motivated by an animus towards Catholics. For example, there are no allegations that Bellafatto, or anyone else at the school, made repeated invidious comments about Catholics spanning a continued period of time. See Hoxhaj v. Michael Cetta, Inc., No. 21-CV-6486 (LJL), 2023 WL 3455444, at *11 (S.D.N.Y. May 15, 2023) (establishing discriminatory animus based on repeated discriminatory comments about plaintiff's religion over years of his employment). Nor has Plaintiff alleged that non-Catholic teachers were treated better than Catholic teachers at P.S. 36. Instead, Plaintiff's allegations again undermine a finding of discriminatory animus due to her religion. See ECF No. 22 at 12. Plaintiff alleges that other Catholic teachers received permission to observe Catholic holidays. See ECF No. 33 ¶ 17. The fact that Bellafatto permitted other

Catholic teachers to observe religious holidays suggests that Bellafatto's failure to respond to Plaintiff's request for those holidays was not motivated by animus towards Catholics.

Similarly, even under the more lenient standard applicable to Plaintiff's NYCHRL claim, Plaintiff's allegations are insufficient to plausibly allege discriminatory animus by Defendants. As discussed, other Catholics were allowed to observe Catholic holidays and Plaintiff was not penalized when she took those holidays off. Bellafatto's comment that Plaintiff should attend church at night, see ECF No. 33-1 ¶ 15, does not rise above a petty slight, and, despite the comment, Plaintiff alleges that she nonetheless took the religious holidays off with no consequence, id. ¶ 16. See Kerman-Mastour v. Fin. Indus. Regul. Auth. Inc., 814 F. Supp. 2d 355, 357-58 (S.D.N.Y. 2011) (finding that a defendant allowing the plaintiff to take time off for religious holidays, even after making comments related to the number of holidays requested, was at most a petty slight and not evidence of discriminatory animus). Moreover, even Bellafatto's doubt as to whether Plaintiff was Catholic, see ECF No. 33-1 ¶ 16, by itself, does not give rise to a plausible inference of religious animus by Defendants. See Livingston, 563 F. Supp. 3d at 257 (stating that under the NYCHRL an employer asking a plaintiff to prove their religion did not demonstrate any discriminatory animus).

Consequently, granting Plaintiff leave to amend her religious-discrimination claims under Title VII, the NYSHRL, and the NYCHRL would be futile, as Plaintiff has failed to allege facts from which to support a plausible inference that Defendants acted out of animus towards Catholics.

### 3. Age-Discrimination claims under the ADEA, the NYSHRL, and the NYCHRL

The ADEA makes it unlawful for a covered employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a)(1); McCormack v. IBM, 145 F. Supp. 3d 258, 265-66 (S.D.N.Y. 2015). To survive a motion to dismiss, Plaintiff's age-discrimination claim under the ADEA must plausibly allege that Plaintiff "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. Plaintiff must also plausibly allege "that age was the but-for cause of the employer's adverse decision." Vega, 801 F.3d at 86 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). "Although there are differences between the [NYSHRL], [NYCHRL], and [ADEA] . . . age discrimination suits brought under the [NYSHRL] and [NYCHRL] are subject to the same analysis as claims brought under the ADEA." Waldorf v. Liberty Maint., Inc., No. 05-CV-2557 (RJH), 2007 WL 942103, * 4 (S.D.N.Y. Mar. 29, 2007) (quoting Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)).

The Court dismissed Plaintiff's ADEA, NYSHRL, and NYCHRL claims based on age discrimination because there were no allegations in the first amended complaint supporting an inference of discrimination based on Plaintiff's age. ECF No. 22 at 14. As the Court explained, the only allegation pertained to Plaintiff's age (47 years old). Id. But beyond that, Plaintiff relied on Bellafatto's alleged statement that she "was a financial burden to her school due to her high salary and her time off for disability" to support an inference of age-based discriminatory animus. Id.; see also ECF No. 12 ¶ 22. As the Court determined, Plaintiff had not tied Bellafatto's comments about her "high" salary to her age. See ECF No. 22 at 14.

The proposed second amended complaint again alleges that Bellafatto told Plaintiff that she was a "financial burden" in part because of "high salary and her time off for disability which required [Bellafatto] to hire substitutes frequently." ECF No. 33-1 ¶ 29. Plaintiff adds that

"Bellafatto['s] repeated comments about Plaintiff's high salary were a code word for age," because her salary increased "with her seniority and her years of service." Id. Plaintiff also now alleges that "senior teachers often also received disciplinary letters to file, while younger teachers appear to get preferential treatment" and that "Bellafatto showed a pattern of forcing out older and/or disabled staff members." ECF No. 33-1 ¶ 30. Plaintiff seemingly suggests, by naming six individuals and including their age, that those employees were also impacted by Bellafatto's pattern of forcing out older staff members. Id. None of Plaintiff's allegations suffice to draw a plausible inference that Defendants acted out of age-based animus.

Plaintiff's new allegation that Bellafatto's comment about Plaintiff's high salary was a veiled reference to age is conclusory. There are no facts from which to plausibly infer that any comment by Bellafatto about Plaintiff's high salary was in fact a negative comment about Plaintiff's age. Even Plaintiff's allegation that her "salary advanced with her seniority and her years of service" is insufficient to support an inference of age-based discrimination. See Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 250 (2d Cir. 2005) ("'Seniority is not an accurate indicator of age' that by itself, can support an inference that adverse actions based on seniority necessarily evidence age discrimination.") (quoting Woodman v. WWOR-TV, Inc., 411 F. 3d 69, 85 (2d Cir. 2005)). Additionally, there are no facts from which to infer that Plaintiff was penalized *because of* her age.

Further, Plaintiff's allegation that younger teachers received "preferential treatment" lacks factual support and is conclusory. Plaintiff, for instance, does not provide any examples of the preferential treatment afforded by Bellafatto to specific younger teachers at P.S. 36. See Blige v. City Univ. of N.Y., No. 15-CV-8873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss

disparate treatment claims 'where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants.") (quoting Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 432 (E.D.N.Y. 2016)). Finally, although Plaintiff points to six older employees, her allegation that Bellafatto "showed a pattern of forcing out older and/or disabled staff members" is also conclusory. Beyond providing their age, Plaintiff includes no facts from which to plausibly infer that Bellafatto "forced out" these six individuals because of their age. Plaintiff does not even describe what happened to these individuals or provide any allegations to support an inference that what occurred was driven by age-based animus on the part of Defendants. See Marcus v. Leviton Mfg. Co., Inc., 661 Fed. App'x 29, 32 (2d Cir. 2016) (affirming the dismissal of ADEA and NYSHRL age-discrimination claims where plaintiff alleged that the defendant was attempting to get "younger" by terminating older employees and replacing them with younger hires but the complaint did not include specific facts to support this conclusion or the "reasons with respect to the termination of other employees"); Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (dismissing plaintiff's ADEA age-discrimination claim where plaintiff alleged that his employer hired a person younger than him that was "devoid of further factual enhancement" and failed to provide details about the supposed younger employees which would allow the court to conclude that defendant's failure to hire him "occurred under circumstances from which a discriminatory motivation can be inferred").

Even under the more lenient standard of the NYCHRL, Plaintiff's new allegations would still leave her discrimination claim lacking because there are no allegations to support a plausible inference that Plaintiff was treated less well than other employees due to her age. See Stinson v.

Morningstar Credit Ratings, LLC, No. 22-CV-6164 (JLR), 2024 WL 3848515, at *19 (S.D.N.Y. Aug. 16, 2024) (dismissing an age-discrimination claim brought under the NYCHRL for same reason as court dismissed ADEA claim, because plaintiff failed to show that she had been treated less well by her employer because of her age or that her employer had a pattern of targeting older workers).

Accordingly, Plaintiff's age-discrimination claims under the ADEA, the NYSHRL, and the NYCHRL fail to plausibly allege a claim.

### 4. Hostile Work Environment under the ADA, the ADEA, Title VII, the NYSHRL, and the NYCHRL

Plaintiff also asserts hostile work environment claims: under the ADA, the NYSHRL, and the NYCHRL based on her disability[9]; under the ADEA, the NYSHRL, and the NYCHRL based on age; and under Title VII, the NYSHRL, and the NYCHRL based on her religion. The Court dismissed the disability related NYSHRL and NYCHRL claims because Plaintiff had abandoned them and failed to defend those claims in her opposition to Defendants' motion to dismiss. See ECF No. 22 at 6. As to the ADA claim, the Court dismissed it because the incidents of allegedly offensive conduct described in the complaint did not suffice to plausibly state that she was subjected to a hostile work environment. See id. at 19-20. The Court dismissed Plaintiff's age-based hostile work environment claims under the ADEA, the NYSHRL, and the NYCHRL, as well as her religion-based hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL claims, as abandoned. See id. at 6.

---

[9] Plaintiff's disability-discrimination claims under the ADA, the NYCHRL, and the NYSHRL were not dismissed by the Court and are restated in Plaintiff's proposed second amended complaint. See ECF No. 33-1 ¶¶ 63-66, 77-80, 81-84.

a) Disability-related hostile work environment claims

Claims under the ADA, the NYSHRL, and the NYCHRL share an analytical framework. Muktadir v. Bevacco Inc., No. 12-CV-2184 (FB) (RER), 2013 WL 4095411, at *1 (E.D.N.Y. Aug 13, 2013). "To state a claim that a plaintiff was subjected to a hostile work environment, a complaint must plausibly allege a workplace setting 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'" Brodt v. City of New York, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Id. (quoting Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004)).

"At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 465 (S.D.N.Y. 2023) (quoting Cowan v. City of Mount Vernon, No. 14-CV-8871 (KMK), 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017)). A plaintiff must also "demonstrate that she was subjected to the hostility because of her membership in a protected class." Verne, 697 F. Supp. 3d at 53 (quoting Murtha v. N.Y. State Gaming Comm'n, No. 17-CV-10040 (NSR), 2019 WL 4450687, at *8 (S.D.N.Y. Sept. 17, 2019) (internal citations omitted)). "Unlike [the ADA and] NYSHRL's more stringent standards, to make out a hostile work environment claim under NYCHRL, the alleged conduct need not be severe or pervasive." Kugel v. Queens Nassau Nursing Home Inc., 568 F. Supp. 3d 253, 264 (E.D.N.Y. 2021) (quoting Mihalik, 715 F.3d at 110, 113). Instead, a plaintiff need only allege evidence of "having been treated 'less well' than other employees because of her disability." Id.

31

In determining whether a plaintiff has plausibly alleged an actionable hostile work environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321 (quoting Harris, 510 U.S. at 23); see also Alfano v. Costello, 294 F.3d 365, 376-81 (2d Cir. 2002) (analyzing a variety of alleged incidents in considering sufficiency of evidence to support hostile work environment claim, including disciplinary memorandums added to the plaintiff's personnel file and investigations into changes in performance reviews). "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Id. (citation omitted). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Isbell v. City of New York, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation marks and citation omitted). "[E]xcessive criticism and rudeness do not constitute a hostile work environment[.]" Ramirez v. Temin & Co., No. 20-CV-6258 (ER), 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

"[A]llegations of a heavier workload alone can[ ] support a viable hostile work environment claim" if the "plaintiff was subjected to 'disproportionately burdensome work assignments.'" Wilson v. Family Dollar Stores of N.Y., Inc., No. 06-CV-639 (DGT), 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008) (quoting Garone v. UPS, 436 F. Supp. 2d 448, 467 (E.D.N.Y. 2006), aff'd, 374 F. App'x 156 (2d Cir. 2010)). "A reasonable employee could find that the assignment of a disproportionate workload altered her employment conditions for the

worse." Sanderson v. Leg Apparel LLC, No. 19-CV-8423 (GHW), 2020 WL 3100256, at *8 (S.D.N.Y. June 11, 2020) (quotation marks and citation omitted). Additionally, "[i]mproper, unfair, or false discipline can contribute to a hostile work environment" so long as "the disciplinary action was connected to Plaintiff's protected characteristics." Kirkland-Hudson, 665 F. Supp. 3d at 466 (quoting Buczakowski v. Crouse Health Hosp., Inc., No. 18-CV-330 (LEK) (ML), 2022 WL 356698, at *11 (N.D.N.Y. Feb. 7, 2022)).

In her prior complaint, Plaintiff alleged that Defendants never gave her "a key to two second floor bathrooms," gave "her assignments that required excessive walking, stairclimbing, and lunch duty against the union contract," gave "her disciplinary letters that she had to sign without an opportunity to review them," and had her teach classes outside "her license area." ECF No. 12 ¶ 35. The Court concluded that Plaintiff had failed to tie these incidents to her disabilities. See ECF No. 22 at 19-20.

In her proposed second amended complaint, Plaintiff includes the following allegations related to her medical conditions. During the 2015-2016, 2016-2017, and 2017-2018 school years, Bellafatto gave her disciplinary notices for excessive absences, despite the absences being medically justified and approved. See ECF No. 33-1 ¶¶ 12, 14. In October 2017, Bellafatto told Plaintiff that she should "just resign" if her disability was going to cause her to be out sick, and in December 2017, Bellafatto told her that she should resign, take medical leave, or go on disability if her cancer was back. Id. ¶¶ 19, 26. Bellafatto also commented in December 2017 that Plaintiff "went to doctors too often," "did not even look sick," and "should see doctors during her vacation time." Id. In January 2018, Bellafatto informed the union that she was investigating the last 20 years of Plaintiff's attendance and had been trying to get the DOE to remove Plaintiff from P.S. 36. Id. ¶ 27. At a disciplinary hearing in April 2018, Bellafatto told

33

Plaintiff again that she was a "financial burden" due, in part, to her time off for disability and that she "did not need someone like Plaintiff on her payroll due to her salary and disabilities," reiterating that Plaintiff should retire, apply for disability, or take medical leave. Id. ¶ 29. Three days later, Plaintiff received another disciplinary letter for time an attendance issues, including "FMLA approved dates." Id. ¶ 31. Then in April 2019, Plaintiff received another disciplinary letter raising issues with her time and attendance. Id. ¶ 41.

In December 2018, Bellafatto did not let Plaintiff go home when she was "extremely sick and feverish," even though she allowed another teacher who was not sick to leave early that day. Id. ¶ 37. Bellafatto also "refused" to give Plaintiff a key to two second-floor bathrooms, despite her need for immediate bathroom access due to her Crohn's disease, which led to "numerous bathroom accidents." See id. ¶ 22. Plaintiff also adds that Bellafatto made her travel on school bus trips despite Plaintiff informing Bellafatto that "yellow busses did not have bathrooms, which was difficult for Plaintiff because of her Crohn's disease." Id. Bellafatto allowed another teacher "without any known medical issues to stay behind with the students who did not attend the trip." Id. Bellafatto also gave Plaintiff assignments that "required excessive walking and stair climbing despite Plaintiff's arthritis." Id. Additionally, Plaintiff alleges that in fall 2019, Bellafatto assigned her "laborious tasks," including moving "heavy furniture, rugs, books, and supplies; unpacking and stamping textbooks; cleaning up the library; [and] making math manipulative bags for every class in grades k through 5, despite her arthritis and fibromyalgia." Id. ¶ 47. When Plaintiff complained to Bellafatto about the assignments, she was given "even more degrading and laborious tasks." Id. Plaintiff was repeatedly asked by her colleagues why she was not teaching, which Plaintiff alleges "subjected her to public shame and humiliation." Id. ¶ 48.

Plaintiff's proposed second amended complaint pleads just enough to plausibly allege that Defendants created a hostile work environment due to animus towards Plaintiff because of her disability. First, Plaintiff has now alleged numerous incidents and comments by Bellafatto over a span of several months. Many of the comments by Bellafatto suggest animus towards Plaintiff because of her medical conditions. For instance, Plaintiff alleges that Bellafatto told her on multiple occasions that she should resign if her disability was going to cause her to be absent, and noted that Plaintiff went to doctors to often. See ECF No. 33-1 ¶¶ 19, 26, 29. Plaintiff also alleges that Bellafatto told her that she was a financial burden to the school "due to her . . . time off for disability which required the principal to hire substitutes frequently." ECF No. 33-1 ¶ 29. This, along with Bellafatto's repeated comments directing Plaintiff to retire because of her illnesses, plausibly suggests, at the pleading stage, that Bellafatto treated Plaintiff differently because of her medical conditions. See Alfano, 294 F.3d at 378 (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 565-66 (6th Cir. 1999)).

Plaintiff further points to unsatisfactory performance ratings and disciplinary letters spanning her years working at P.S. 36 that fixate on her attendance, despite her absences being justified and approved. See ECF No. 33-1 ¶¶ 11-12, 14, 23-24, 27, 28, 31, 41. Plaintiff also alleges, id. ¶¶ 47-48, that she was assigned laborious tasks from fall 2019 until March 2020 that were not part of typical teaching duties, were particularly challenging for Plaintiff to perform because of her medical conditions, and caused her public shame and humiliation because she was not teaching. See Kirkland, 665 F. Supp. 3d at 433, 466 (stating that plaintiff sufficiently alleged hostile work environment based on an increased workload and by showing she was subject to "unfair" discipline letters which included fabricated performance issues); Fox v. Costco Wholesale Corp., 918 F.3d 65, 75-76 (2d Cir. 2019) (mocking comments from co-workers that

were ongoing for "months and months" were enough to support ADA and NYSHRL hostile work environment claims); see also Kirkland-Hudson, 665 F. Supp. 3d at 466 (concluding that plaintiff had alleged that he was subjected to objectively severe or pervasive conduct because he alleged assignment of "a disproportionate workload").

Given the more lenient standard under the NYCHRL, Plaintiff's allegations suffice to adequately plead that Plaintiff was treated "less well" than employees without a disability. Richards v. Dep't of Educ. of City of New York, No. 21-CV-338 (LJL), 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022) (relying on analysis under the federal claims to support finding that NYCHRL claim survived). For example, Plaintiff was forced to ride the school bus on field trips, without a bathroom, even though Bellafatto allowed another teacher who did not require the same bathroom access as Plaintiff to stay behind at the school. See ECF No. 33-1 ¶¶ 22, 37. Plaintiff was also denied access to bathrooms near her classroom. See id. ¶ 22; see also Kugel, 568 F. Supp. 3d at 264 (denying a motion to dismiss a NYCHRL hostile work environment claim where her employer refused to accommodate her disability).

In sum, Plaintiff has stated a disability-related hostile work environment claim under the ADA, the NYSHRL, and the NYCHRL.

  b)  <u>Age and religion-based hostile work environment claims</u>

Hostile work environment claims based on age and religion, under the ADEA and Title VII, respectively, and claims under the NYSHRL, all require that Plaintiff "demonstrate that she was subjected to the hostility because of her membership in a protected class." Brennan v. Metro. Opera Ass'n Inc., 192 F.3d 310, 318 (2d Cir. 1999) (age-based hostile work environment claim); Richards, 2022 WL 329226, at *14-15 (for Title VII claim for hostile work environment, "[p]laintiff [her]self must be the target of the hostile work environment and subjected to the

hostility *because of* membership of a protected class") (quoting Sherman v. Fivesky, LLC, No. 19-CV-8015 (LJL), 2020 WL 2136227, at *6 (S.D.N.Y. May 5, 2020) (emphasis in original)).

Unlike her disability-related claim, Plaintiff's allegations do not plausibly allege that she was subjected to a hostile work environment by Defendants because of animus towards Plaintiff due to her age or religion. As discussed with respect to Plaintiff's age and religion-based discrimination claims, Plaintiff has not alleged sufficient facts from which to infer a discriminatory animus on the part of Defendants based on Plaintiff's age or religion. See infra Sections C.2, C.3. Plaintiff's failure to plausibly allege discriminatory animus for those claims is also fatal to her hostile work environment claims. See Richards, 2022 WL 329226, at *15 (reasoning that where Plaintiff could not establish discriminatory animus for discrimination claim, her hostile work environment claim failed for same reason); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) (same), aff'd, 713 F.3d 163 (2d Cir. 2013) (per curiam); DeFranco v. N.Y. Power Auth., No. 20-CV-1861 (LJV), 2024 WL 1621533, at *9 (W.D.N.Y. Apr. 15, 2024) (dismissing hostile work environment claim were discrimination claim failed).

In sum, Plaintiff's proposed second amended complaint fails to state hostile work environment claims based on age or religion, but she has adequately pled hostile work environment claims under the ADA, the NYSHRL, and the NYCHRL based on disability.

D. Leave to amend

Rule 15(a)(2) provides that the Court should "freely give leave" to a party to amend a pleading "when justice so requires." F.R.C.P. 15(a)(2). Leave to amend may properly be denied for "repeated failure to cure deficiencies by amendments previously allowed" or futility. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). Here, Plaintiff was

previously informed of the deficiencies in her FMLA interference claim based on her first leave request (December 2016), religious-discrimination claims under Title VII, the NYSHRL, and the NYCHRL, and age-discrimination claims under the ADEA, the NYSHRL, and the NYCHRL. Even with the Court's assistance, Plaintiff has failed to cure those deficiencies in her proposed second amended complaint. Under these circumstances, Plaintiff should not be afforded another opportunity to amend these claims. See, e.g., Wimberly v. Experian Info. Sols., No. 18-CV-6058 (MKV), 2021 WL 326972, at *1, *4-6 (S.D.N.Y. Feb. 1, 2021) (denying leave to amend where proposed amended complaint did not fix deficiencies previously identified); Ngambo v. Chase, No. 20-CV-2224 (NSR), 2023 WL 900489, at *2, *5-6 (S.D.N.Y. Dec. 28, 2023) (dismissing plaintiff's claims with prejudice where Plaintiff failed to plead facts sufficient to cure the deficiencies identified in the court's previous Order to Amend). I therefore recommend that Plaintiff be denied leave to amend her FMLA interference claim based on her first leave request (December 2016) and her religious-discrimination and age-discrimination claims.

With regards to Plaintiff's FMLA interference claim arising from her third leave request (January 2020), I also recommend that Plaintiff be denied leave to amend. Although the Court did not address that claim in its prior decision, the deficiency in this claim is the same deficiency that the Court previously addressed with regards to Plaintiff's nearly identical FMLA interference claims for her first and second leave requests. Based on the Court's guidance as to those claims, Plaintiff should have been able to adequately allege in her proposed second amended complaint that she met the hours eligibility requirement for her FMLA interference claim based on her third leave request from January 2020.

For the same reason, I recommend that Plaintiff be denied leave to amend her hostile work environment claims based on age and religion. Although the Court did not previously reach

the merits of those claims, the Court did address the merits of Plaintiff's age and religious-discrimination claims. The deficiencies the Court identified as to those discrimination claims apply equally to Plaintiff's hostile work environment claims. For all of these claims, Plaintiff has failed to allege that Defendants acted out of discriminatory animus. Plaintiff should therefore have fixed this deficiency in her age-based and religious-based hostile work environment claims in her proposed second amended complaint. Given her failure to do so, Plaintiff should not be permitted another opportunity to amend.

## CONCLUSION

For the reasons stated above, I respectfully recommend that Plaintiff's motion for leave to file a second amended complaint be **GRANTED** in part and **DENIED** in part. I recommend that Plaintiff be granted leave to amend her FMLA interference claim for her second leave request (from December 2018), and her hostile work environment claims due to disability under the ADA, the NYSHRL, and the NYCHRL. I further recommend that Plaintiff's motion for leave to amend be denied as to the following claims: Plaintiff's FMLA interference claims based on her first and third leave requests; her religious-discrimination and hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL; and her age discrimination and hostile work environment claims under the ADEA, the NYSHRL, and the NYCHRL.

**SO ORDERED.**

DATED:      New York, New York
            September 7, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Andrew L. Carter, Jr. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**